IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES EAKLE, | : |
| | : |
| Plaintiff | : CIVIL NO. 4:CV-04-2040 |
| | : |
| v. | : Judge Jones |
| | : |
| TENNIS, Superintendent, et al., | : |
| | : |
| Defendants | : |

**ORDER**

**September 15, 2005**

**BACKGROUND:**

Charles Eakle ("Plaintiff" or "Eakle"), an inmate presently confined in the Smithfield State Correctional Institution ("SCI-Smithfield"), in Huntingdon, Pennsylvania, filed this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff's complaint centers around several alleged constitutional violations which occurred while he was confined in the Rockview State Correctional Institution ("SCI-Rockview"), in Bellefonte, Pennsylvania. Specifically, Eakle challenges his placement in the Restricted Housing Unit ("RHU"). He claims that he was improperly placed in the RHU and subjected to excessive force in being placed in the RHU. Named as Defendants are the following employees and entities of SCI-Rockview: Program Review Committee

("PRC"); Superintendent Franklin Tennis; Former Deputy Superintendent Anthony Biviano; Program Manager Ray Coffman; Corrections Counselor Michael Knapp; Lieutenant Dale Walker; and Corrections Officers Timothy Watson, and Timothy Gensamer ("Defendants").

Presently pending before the Court are the Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion")(doc. 17) and Defendant's Motion for Summary Judgment ("Defendant's Motion"). (Rec. Doc. 13).[1]  For the reasons set forth below, Defendants' Motion (doc. 13) will be granted.

## **STANDARD OF REVIEW**:

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

---

1. Defendants originally filed a Motion to Dismiss.  However, because matters outside of the record would be considered in deciding the Motion, by Order dated March 8, 2005, Defendants' motion to dismiss was converted to a Motion for Summary Judgment.  (Rec. Doc. 16).

2

supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. <u>See</u> <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. <u>See</u> <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>see also</u> <u>Clement v. Consolidated Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of

3

material fact, the nonmoving party is required by Rule 56(e)[2] to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. See Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56(e)

---

2. Eakle was provided with copies of M.D. Pa. Local Rules 7.1 through 7.8, Local Rule 26.10, and Federal Rule of Civil Procedure 56(e).  In relevant part, Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Local Rule 7.4 provides in relevant part:

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

(Rec. Doc. 3, Standing Practice Order).

4

shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**STATEMENT OF FACTS:**

Eakle was placed in Administrative Custody (Rec. Doc. 1 at 2).  On November 20, 2003, Eakle received an "others" report, from SCI-Rockview Security Officers Lt. Vance and Lt. Eaton, stating that he was to remain in Administrative Custody pending further investigation of the assault and also because placement in general population would "endanger [his] safety and welfare." (Rec. Doc. 1 at 2).

On December 12, 2003, whiled housed in Administrative Custody, Eakle was issued Misconduct Report No. A618953 for having another inmate "slide a magazine to [Plaintiff] under [his] door."  (Rec. Doc. 1at 2-3).

On December 17, 2003, as a result of his misconduct, Plaintiff was directed by Officers Watson and Walker, to "put [his] jumpsuit on and cuff up to move to (Restricted Housing Unit) RHU."  (Rec. Doc. 1 at 3).   Plaintiff refused, stating that he was in Administrative Custody "for medical reasons".  (Rec. Doc. 1 at 3).   The officers left

5

Plaintiff's cell, and returned with an "assault team." (Rec. Doc. 1 at 3). Officer Walker again demanded Plaintiff to put on his jumpsuit. After Plaintiff refused, the "assault team" entered his cell and allegedly "attacked [plaintiff] all at once and dragged [him] to the RHU." (Aff. of Charles Eakle at 3). Plaintiff claims that he was then placed in a cell in the RHU that smelled of urine. (Aff. of Charles Eakle at 4). After the handcuffs were removed, Plaintiff was examined by a nurse. (Aff. of Charles Eakle at 4). Plaintiff had "scratches on [his] right leg and arm and the next day [his] hole right side from [his] neck to [his] right knee was all black and blue." (Aff. of Charles Eakle at 4). Later that day, Plaintiff questioned Officer Walker as to who authorized his move from Administrative Custody to the RHU. Walker responded that it was the Shift Commander. (Aff. of Charles Eakle at 5).

On January 8, 2004, Eakle filed Grievance No. 72450, claiming that he was improperly removed from Administrative Custody and "forced into the RHU", in "violation of [his] safety and protection" and "in violation of DOC Inmate Hand Book", which states that an inmate placed in Administrative Custody for his own safety, can only be released by the PRC or Superintendent. (Rec. Doc. 15, Ex. A).

On January 9, 2004, the SCI-Rockview Grievance Coordinator returned Plaintiff's grievance to him. (Rec. Doc. 15, Ex. B). The Grievance Coordinator rejected Eakle's

6

grievance on the basis that: (1) Grievances related to Inmate Disciplinary and Restricted Housing Unit Procedures are to be grieved through DC-ADM 801; (2) Grievances related to Administrative Custody Procedures are to be grieved through DC-ADM 802; and (3) Plaintiff's excessive force claim was not submitted within fifteen (15) calendar days after the event upon which the claim was based. (Rec. Doc. 15, Ex. B). Eakle did not resubmit grievances in accordance with DC-ADM 801 or 802, or appeal the decision of the Grievance Coordinator to the Superintendent, or the Secretary's Office of Inmate Grievances and Appeals. (Rec. Doc. 15, Ex. A at ¶ 10).

On September 16, 2004, Plaintiff filed the instant action in which he seeks compensatory and punitive damages, as well as injunctive relief. (Rec. Doc. 1 at 4).

**DISCUSSION:**

Defendants contend that Eakle's failure to exhaust available administrative remedies entitles them to an entry of summary judgment in their favor. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Exhaustion requires completion of the entire administrative process. See Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843-44 (E.D. Pa. 2000). If a prisoner fails to follow the required administrative procedures, including meeting deadlines, the inmate's action cannot be maintained. See Buckner v. Bussanich, No. 1:CV-00-1594, slip op. at 6 (M.D. Pa. April 3, 2001) (Caldwell, J.)("an administrative remedy is not made unavailable simply because a prisoner failed to timely exercise his rights under the procedure. Otherwise, the prisoner could avoid the exhaustion requirement simply by refusing to pursue administrative remedies.").

The Pennsylvania Department of Corrections ("Pennsylvania DOC") has established procedures for the filing of complaints.  First, the Pennsylvania DOC Consolidated Inmate Review System provides for three levels of administrative review of inmate grievances: the initial grievance submitted to the Facility Grievance Coordinator, an intermediate level of appeal to the Facility Manager, and a final level of appeal to the Secretary's Office of Inmate Grievances and Appeals. (Rec. Doc. 20, Ex. 2-A, Commonwealth of Pennsylvania, Department of Corrections, Consolidated Inmate Grievance Review System, Policy No. DC-ADM 804 § VI). See also Booth v. Churner, 206 F.3d 289, 293 n. 2 (3d Cir.2000) (outlining the grievance review process).

The grievance procedure  requires a prisoner to submit a grievance for initial

8

review within fifteen working days after the event upon which the grievance is based. (Rec. Doc. 20, Ex. 2-A, DC-ADM 804 § VI, Part A(1)(h)).  The inmate must state the facts upon which he is entitled to relief.  (Rec. Doc. 20, Ex. 2-A, DC-ADM 804 § VI, Part A(1)(g))("The inmate shall include a statement of facts relevant to the claim. . . The inmate should identify any persons who may have information that could be helpful in resolving the grievance.  The inmate should also include information on attempts to resolve the matter informally.").  Indeed, in Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir.2004), the Third Circuit Court of Appeals recognized the significance in identifying the relevant facts and persons in order to bring a subsequent federal lawsuit:

> On this matter, the text is mandatory, or nearly so. . . To the extent that Brown's identity is a "fact [] relevant to the claim." – and it is– it was mandatory for Spruill to include it.  To the extent that Brown was a "person [] who may have information" or someone with whom Spruill made "attempts to resolve the matter informally" – and he was – Spruill was required to identify Brown if practicable.

Spruill, 372 F.3d at 234.  Moreover, the exhaustion requirement of § 1997e(a) is not satisfied simply "whenever there is no further process available to the inmate within the grievance system (which would happen if, say, an inmate fails to file an administrative appeal)...." Spruill, 372 F.3d at 227-28.  Rather, § 1997e(a) requires that an inmate "avail[ ] himself of every process at every turn (which would require all appeals to be

9

timely pursued, etc.)." Id.

In applying the above analysis to the factual background surrounding this action, it is readily apparent that Plaintiff has procedurally defaulted on his claims and summary judgment will be granted in favor of the Defendants. Plaintiff's grievance was returned to him because issues relating to Inmate Disciplinary and Restricted Housing Unit Procedures, as well as Administrative Custody, are to be grieved through Department of Corrections Administrative Directives specifically designed for those issues. Further, the remainder of Plaintiff's grievance was untimely filed. (Rec. Doc. 15, Ex. B). The record discloses that Eakle failed to either resubmit a grievance pursuant to the appropriate Administrative Directive, or timely file an appeal from the Grievance Coordinator's decision. Thus, Eakle has sustained a procedural default under the applicable Pennsylvania DOC regulations.

Spruill cited with approval the Seventh Circuit Court of Appeals decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). See Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit Court of Appeals ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Eakle offers no justification for his failure to resubmit a grievance in accordance with the appropriate Department of

10

Corrections Directive, or file an appeal therefrom, within the deadline set by regulation. Thus, Eakle is now foreclosed from litigating this claim in this Court.

In <u>Spruill</u>, the Third Circuit Court of Appeals found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230.  In <u>Pusey v. Belanger</u>, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied <u>Spruill</u> to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance.  In <u>Berry v. Kerik</u>, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances.  In <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1186 (10th Cir. 2004), the Tenth Circuit Court of Appeals embraced the holding in <u>Pozo</u>, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted."  These precedents support dismissal of this action due to Eakle's

11

failure to pursue his administrative remedies with respect to his claims.  Accordingly, Defendants' Motion for Summary Judgment will be granted.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Motion (doc. 13) is **GRANTED**.  Judgment is hereby entered in favor of Defendants and against the Plaintiff.

2. Plaintiff's Motion (doc. 17) is **DENIED**.

3. The Clerk of Court is directed to **CLOSE** this case.

4. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge